Patrick J. Egan
Matthew S. Olesh
FOX ROTHSCHILD LLP
2000 Market Street, 20th Fl.
Philadelphia, PA 19103
Tel: 215-299-2825
Fax: 215-299-2150
pegan@foxrothschild.com

William Burck
Ben O'Neil
Veronica Yepez
Jonathan Cooper
QUINN EMANUEL URQUHART
& SULLIVAN LLP
777 6th Street NW
Washington, DC 20001
Tel: 202.538.8000
Fax: 202.538.8100
williamburck@quinnemanuel.com

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

JOSEPH SIGELMAN

Case No. 14-00263-1 (JEI)

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## DEFENDANT'S PENDING MOTION TO DISMISS FCPA CHARGES

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    I.    The FSIA's definition of "instrumentality" does not control what
          constitutes an "instrumentality" under the FCPA. ................................................2

        A.    It is not appropriate to import the FSIA's definition of
              "instrumentality" into the FCPA. ..............................................................2

        B.    Judicial decisions and the Department of Justice's own position
              support a finding that an FCPA "instrumentality" is different from
              an FSIA "instrumentality." ........................................................................7

    II.    Ecopetrol's SEC filings support Sigelman's motion to dismiss............................10

    III.    Colombian law is relevant to determining Ecopetrol's functions. ........................12

CONCLUSION.....................................................................................................................15

i

## TABLE OF AUTHORITIES

**Cases**

*Andrews v. United States*,
    441 F.3d 220 (4th Cir. 2006) ........................................................................ 4

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ...................................................................................... 5

*Connecticut Bank of Commerce v. Republic of Congo*,
    309 F.3d 240 (5th Cir. 2002) ...................................................................... 10

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) ...................................................................................... 8

*Hall v. American National Red Cross*,
    86 F.3d 919 (9th Cir. 1996) .......................................................................... 4

*In re Princo Corp.*,
    486 F.3d 1365 (Fed. Cir. 2007) .................................................................... 4

*Kimbrough v United States*,
    552 U.S. 85 (2007) ........................................................................................ 5

*Republic of Argentina v. NML Capital, Ltd.*,
    134 S. Ct. 2250 (2014) .............................................................................. 3, 6

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) .................................................................................... 10

*Robert Bosch Corp. v. Air France*,
    712 F. Supp. 688 (N.D. Ill. 1989) ................................................................ 7

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47 (2007) ........................................................................................ 6

*Samantar v. Yousuf*,
    560 U.S. 305 (2010) .................................................................................. 3, 4

*U.S. Postal Service v. Amada*,
    200 F.3d 647 (9th Cir. 2000) ........................................................................ 4

*United States v. Aguilar*,
    783 F. Supp. 2d 1108 (C.D. Cal. 2011) .......................................... 8, 13, 15

*United States v. Askari*,
    140 F.3d 536 (3d Cir. 1998) (*en banc*), *vacated on other grounds by*
    151 F.3d 131 (3d Cir. 1998) (*en banc*). ...................................................... 6

*United States v. Carson*,
    2011 WL 5101701 (C.D. Cal. May 18, 2011) .............................................. 8

*United States v. Esquenazi*,
    752 F.3d 912 (11th Cir. 2014) ............................................................ passim

*United States v. Esquenazi*,
    No. 1:09-cr-21010-JEM (S.D. Fla. Nov. 19, 2010), ECF No. 309 ............ 15

*United States v. Maury*,
    695 F.3d 227 (3d Cir. 2012). ........................................................................ 5

*United States v. Molt*,
    599 F.2d 1217 (3d Cir. 1979). .................................................................... 14

*United States v. Peterson*,
    812 F.2d 486 (9th Cir. 1987). .................................................................... 13

*United States v. Reorganized CF&I Fabricators of Utah, Inc.*,
  518 U.S. 213 (1996) .................................................................................. 5
*United States v. Santos*,
  553 U.S. 507 (2008) .................................................................................. 7
*Virginia ex rel. Kilgore v. Bulgartabac Holding Group*,
  360 F. Supp. 2d 791 (E.D. Va. 2005) ...................................................... 7
*World Wide Minerals v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) ............................................................... 7

**Statutes**
15 U.S.C. § 78dd-2(a)(1) .............................................................................. 2
15 U.S.C. § 78dd-2(h)(2)(A) ......................................................................... 3
22 U.S.C. § 6023(1). ..................................................................................... 5
28 U.S.C. § 1603 ................................................................................... 3, 4, 7
28 U.S.C. § 1605(a)(2) ................................................................................ 10

**Other Authorities**
Brief for the United States,
  *United States v. Esquenazi*, No. 11-15331-C (11th Cir. Aug. 21, 2012) .............................. 8, 14
Declaration of Professor Michael J. Koehler,
  *United States v. Carson*, No. 8:09-cr-00077-JVS (C.D. Cal. Feb. 21, 2011) ........................... 6
Ecopetrol, Annual Report on Form 20-F (July 15, 2010) ................................ 10, 11, 13
H. Rep. No. 95-640 (Sept. 28, 1977) ........................................................... 6
H.R. Conf. Rep. No. 94-831 (Dec. 6, 1977) ................................................ 6
Information, *United States v. Marubeni Corp*,
  No. 12-cr-022 (S.D. Tex. Jan. 17, 2012) .................................................. 8
Mike Koehler, *The Story of the Foreign Corrupt Practices Act*,
  73 Ohio St. L.J. 929, 934–35 (2012) ....................................................... 6
S. Rep. No. 95-114 (March 28, 1977) .......................................................... 6

**Rules**
Fed. R. Crim. P. 26.1 ........................................................................ 13, 14, 15

## INTRODUCTION

Defendant Joseph Sigelman has moved to dismiss for failure to state an offense Counts Two, Three, and Four of the indictment, as well as the portions of Counts One and Five that charge Sigelman with conspiracy to violate, and with conspiracy to transfer money with the intent to violate, the Foreign Corrupt Practices Act (**FCPA**), on the ground that, even assuming the facts of the indictment as true, he did not bribe an employee of an "instrumentality" of a foreign government, as the statute requires. *See* Defendant's Motion To Dismiss FCPA Charges (**Sigelman FCPA Brief**) (Oct. 29, 2014), ECF No. 112. The government has opposed this motion, *see* Memorandum of the United States in Opposition to Defendant's Second Motion To Dismiss (**Government FCPA Brief**) (Nov. 12, 2014), ECF No. 118, and Sigelman has filed a short letter reply, *see* Letter to Judge Irenas (Nov. 14, 2014), ECF No. 120.

At a status conference on November 24, 2014, the Court gave Sigelman leave to file this supplemental brief to address two specific issues: (1) whether the definition of "instrumentality" set forth in the Foreign Sovereign Immunities Act (**FSIA**) delineates what is an "instrumentality" for purposes of the FCPA; and (2) the role of Colombian law in determining whether an entity is an instrumentality under the FCPA.

As to the first question, the text of the two statutes combined with interpretations of them by various courts and the *U.S. Department of Justice itself* establish that the definition of "instrumentality" in the FSIA does not control the question of whether an entity qualifies as a "instrumentality" under the FCPA. As Sigelman explained in his motion to dismiss, to be an "instrumentality" under the FCPA, an entity must perform a governmental function. *See* Sigelman FCPA Brief at 15–16. The FSIA, by contrast, does *not* impose such a requirement. An entity can qualify as an "instrumentality" under the FSIA merely if (1) it is a corporation, (2) a foreign state directly owns a majority of the corporation's stock, and (3) is incorporated in that

1

foreign state. That is the situation with Ecopetrol. It is a foreign corporation majority-owned by Colombia. But that does not resolve the issue of whether Ecopetrol is an FCPA instrumentality because an FCPA instrumentality *must perform a governmental function*. Ecopetrol does not. *See* Sigelman FCPA Brief at 9–13, 17–18.

As to the relevance of Colombian law to this issue, because only entities that perform a governmental function constitute instrumentalities under the FCPA, it is necessary to discern whether the law of Colombia speaks to the question of whether Ecopetrol performed any governmental function in 2010, when the alleged criminal activity in this case occurred. It does, and does so clearly. As a matter of Colombian law, Ecopetrol ceased performing all governmental functions in 2003, when a Colombian decree transferred all of Ecopetrol's governmental functions to a new agency, the National Hydrocarbon Agency, specifically created to regulate the oil and gas markets in Colombia. *See* Sigelman FCPA Brief at 7–13. Thus, in 2010, Ecopetrol did not perform any governmental function for Colombia, and thus, as a matter of U.S. law, Ecopetrol is not an FCPA instrumentality.

## ARGUMENT

**I.     The FSIA's definition of "instrumentality" does not control what constitutes an "instrumentality" under the FCPA.**

> **A.     It is not appropriate to import the FSIA's definition of "instrumentality" into the FCPA.**

The plain text of the statutes and their underlying purposes both make plain that the FSIA's definition of "instrumentality" should not be used to determine whether an entity is an "instrumentality" under the FCPA.

First, the term itself is defined differently in the two statutes. The FCPA makes it a crime for a U.S. corporation or citizen to willfully bribe a "foreign official" to obtain business. 15 U.S.C. § 78dd-2(a)(1). The statute defines a "foreign official" as an "officer or employee of a

foreign government or any department, agency, or instrumentality thereof." 15 U.S.C. § 78dd-2(h)(2)(A). "The FCPA does not," however, "define the term 'instrumentality.'" *United States v. Esquenazi*, 752 F.3d 912, 920 (11th Cir. 2014).

The FSIA is a very different statute. It provides a "comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state," including civil actions against an "agency or instrumentality of a foreign state." *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2255 (2014) (citation omitted). In contrast to the FCPA, the FSIA expressly defines "instrumentality." "Congress has specifically defined 'agency or instrumentality' in the FSIA" to be any entity that matches "three specified characteristics." *Samantar v. Yousuf*, 560 U.S. 305, 315 (2010). That definition is set out in 28 U.S.C. § 1603:

> For purposes of this chapter—
>     (a) A "foreign state" . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
>     (b) An "agency or instrumentality of a foreign state" means any entity—
>         (1) which is a separate legal person, corporate or otherwise, and
>         (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>         (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

In other words, an entity can qualify as an instrumentality under the FSIA if it is (1) a corporation ("a separate legal person"), (2) majority-owned by a foreign state ("a majority of whose shares or other ownership interest is owned by a foreign state"), and (3) incorporated in that foreign state ("neither a citizen of a State of the United States . . . nor created under the laws of any third country"). Whether a corporation fits the FSIA definition of "instrumentality" is not dispositive of its status under the FCPA. Indeed, the Ninth Circuit commented while undertaking a similar analysis that it is a "serious logical and semantic error" to treat an entity that is an

3

"instrumentality" in one context as necessarily an "instrumentality" in another context. *Hall v. American National Red Cross*, 86 F.3d 919, 922 (9th Cir. 1996) (holding that the Red Cross is not an instrumentality under the Religious Freedom Restoration Act, even though it is an instrumentality for purposes of tax immunity; citation omitted).

Second, the very language of the statutes themselves precludes the wholesale importation of the FSIA's definition into the FCPA. The phrases relevant to the instrumentality analysis differ in the two statutes: "a foreign government or any department, agency, or instrumentality thereof" (in the FCPA) versus "agency or instrumentality of a foreign state" (in the FSIA). The key difference is that "instrumentality" is linked with "department" in the FCPA but not in the FSIA. This difference emphasizes the fact that an "instrumentality" in the FCPA context must, like a "department," be an entity "through which the government performs its functions." *Esquenazi*, 752 F.3d at 922. By contrast, performing a governmental function is not one of the "three specified characteristics" necessary for an entity to be an instrumentality under the FSIA. *Samantar*, 560 U.S. at 315.

Moreover, the first line of 28 U.S.C. § 1603 states that the FSIA's definition of "instrumentality" applies *only* to "this chapter," *i.e.* to Chapter 97 of Title 28 of the U.S. Code, which is the chapter codifying the FSIA. The FCPA is codified not only in a different *chapter* of the U.S. Code, but in a different *title*: chapter 2B of Title 15. When Congress expressly limits a definition to a particular section of the U.S. Code, a court may not apply that definition to a different section. *In re Princo Corp.*, 486 F.3d 1365, 1368–69 (Fed. Cir. 2007); *Andrews v. United States*, 441 F.3d 220, 226 (4th Cir. 2006); *U.S. Postal Service v. Amada*, 200 F.3d 647, 650–51 (9th Cir. 2000).

The text of the FCPA similarly rejects a wholesale importation of the FSIA's definition. The FCPA is, of course, silent on the meaning of "instrumentality." *Esquenazi*, 752 F.3d at 920. But this silence is meaningful. It is inappropriate for judges "to import a definition from outside the criminal provision before them." *United States v. Maury*, 695 F.3d 227, 259 (3d Cir. 2012). If Congress wished to have the FSIA's definition of "instrumentality" apply to a different statute—especially to a criminal statute like the FCPA—it would have inserted in the FCPA (which was enacted a year after the FSIA) an express cross-reference to the FSIA's definition. *See United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 220 (1996) (absence of cross-reference in one statute to a definition in a second statute is "significant" and "reveal[s]" that Congress did not intend the first statute to incorporate the second statute's definition). Congress has expressly incorporated the FSIA's definition into certain other statutes. For example, the statute governing U.S. relations with Cuba specifically provides: "The term 'agency or instrumentality of a foreign state' has the meaning given that term in section 1603(b) of title 28." 22 U.S.C. § 6023(1). Congress thus knows how to incorporate the FSIA's definition when it wishes to. But it did not do so in the FCPA. The absence of such a cross-reference signals that Congress deliberately chose to keep the definition of "instrumentality" in the FCPA distinct from the definition in the FSIA. *See Kimbrough v United States*, 552 U.S. 85, 103 (2007) (it is "particularly inappropriate" to read a requirement into a statute when "Congress has shown that it knows how to" include that requirement "in express terms" in other statutes); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176–77 (1994) (same).[1]

---

[1] Indeed, nothing in the legislative history of the FCPA so much as hints that Congress intended an FSIA "instrumentality" to necessarily be an FCPA "instrumentality." Counsel for Sigelman reviewed key primary sources of the FCPA's legislative history, as well exhaustive scholarly analyses, and found no trace that Congress intended the FCPA *sub silentio* to incorporate the FSIA's definition of "instrumentality." *See, e.g.*, S. Rep. No. 95-114 (March 28,

An *en banc* Third Circuit opinion proves the point. In *United States v. Askari*, the Third Circuit was faced with the question of whether the explicit definition of "crime of violence" in § 4B1.2 of the Sentencing Guidelines should be imported into § 5K2.13 to help define the term "non-violent offense," which the Sentencing Guidelines left undefined. 140 F.3d 536 (3d Cir. 1998) (*en banc*), *vacated on other grounds by* 151 F.3d 131 (3d Cir. 1998) (*en banc*). The *en banc* Third Circuit concluded that the "different phrasing" between these sections, as well as "the absence," in § 5K2.13, "of a cross-reference" to the definition in § 4B1.2, established that the Sentencing Commission did not intend for § 4B1.2 to import the definition from § 5K2.13. *Id.* at 546.

Just so here. All the textual clues—the "different phrasing" in the FCPA and FSIA, "the absence of a cross-reference" in the FCPA to the FSIA's definition, and the FSIA provision expressly limiting its definition to "this chapter"—lead ineluctably to the conclusion that Congress intended the FCPA and the FSIA to define "instrumentality" differently.

Finally, the FCPA and the FSIA serve very different purposes. The FCPA is a *criminal* statute designed to penalize bribery of foreign officials who perform governmental functions. *See* Sigelman FCPA Brief at 3–4. The FSIA, on the other hand, immunizes certain foreign entities from *civil* lawsuits in the United States. *See NML Capital*, 134 S. Ct. at 2255. A word in a criminal statute tends to have a narrower scope than a word in a civil statute. *E.g.*, *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 57–58 & n.9 (2007) (less conduct is "willful" in criminal law than in civil law). That is especially likely when compared with a civil statute

---

1977); H. Rep. No. 95-640 (Sept. 28, 1977); H.R. Conf. Rep. No. 94-831 (Dec. 6, 1977); Mike Koehler, *The Story of the Foreign Corrupt Practices Act*, 73 Ohio St. L.J. 929, 934–35 (2012); Declaration of Professor Michael J. Koehler, *United States v. Carson*, No. 8:09-cr-00077-JVS (C.D. Cal. Feb. 21, 2011) (comprehensively examining all of the statute's legislative history with respect to the meaning of "instrumentality" in the FCPA), *available at http://www.scribd.com/doc/49310598/U-S-v-Stuart-Carson-el-al-Declaration-of-Professor-Michael-Koehler*.

addressing sovereign immunity. Sovereign-immunity statutes are construed to maximize the situations in which the sovereign is immune (which implies a broader definition of "instrumentality" in the FSIA). *See World Wide Minerals v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002). Criminal statutes, by contrast, are read narrowly, not least because the rule of lenity requires construing ambiguous terms in favor of the defendant (which implies a narrower definition of "instrumentality" in the FCPA). *See United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion). Given such orthogonal purposes, it is no surprise that the text, legislative history, and judicial and administrative interpretations of FCPA and FSIA establish that the statutes define "instrumentality" differently.

> **B.      Judicial decisions and the Department of Justice's own position support a finding that an FCPA "instrumentality" is different from an FSIA "instrumentality."**

Under the FSIA, any foreign corporation can qualify as an instrumentality so long as a foreign government directly owns a majority of the corporation's stock. 28 U.S.C. § 1603(b). Foreign corporations that perform purely commercial functions (rather than governmental functions) thus routinely qualify as FSIA instrumentalities under § 1603(b)—though their commercial activities ultimately exclude them from asserting sovereign immunity under a separate provision of the FSIA. *E.g.*, *Virginia ex rel. Kilgore v. Bulgartabac Holding Group*, 360 F. Supp. 2d 791, 794 (E.D. Va. 2005) (Tobacco corporation 79.76% owned by the Republic of Bulgaria "qualifie[d] as an instrumentality of a foreign state under 28 U.S.C. § 1603(a) & (b)," but "[was] not entitled to immunity from the jurisdiction of the courts of the United States or of the States" because of its commercial activity); *Robert Bosch Corp. v. Air France*, 712 F. Supp. 688, 689–91 (N.D. Ill. 1989) (same for Air France, an instrumentality of France).

In contrast, majority ownership by a foreign government is insufficient to qualify an entity as an instrumentality in the FCPA context. The unanimous judicial consensus is that a

corporation *must perform a governmental function* to be an FCPA instrumentality. *Esquenazi*, 752 F.3d at 921–22, 926; *United States v. Aguilar*, 783 F. Supp. 2d 1108, 1115 (C.D. Cal. 2011); *United States v. Carson*, 2011 WL 5101701, at \*5 (C.D. Cal. May 18, 2011). These decisions thus implicitly reject the proposition that an FSIA instrumentality is necessarily also an FCPA instrumentality.

That is also the official position of the U.S. Department of Justice. As the government argued to the Eleventh Circuit in *Esquenazi*—an argument that the Eleventh Circuit ultimately accepted—"the district court correctly instructed the jury" that to be an FCPA instrumentality, an "entity must perform a 'function of the foreign government' and that state ownership of the entity, by itself, is not sufficient." Brief for the United States, *United States v. Esquenazi*, No. 11-15331-C, at 47 (11th Cir. Aug. 21, 2012), *available at* http://www.scribd.com/doc/103498319/U-S-v-Esquenazi-11th-Cir-Appeal-DOJ-Brief. Thus, an FSIA instrumentality is not necessarily an FCPA instrumentality.

According to the U.S. Department of Justice, the reverse is also true: an FCPA instrumentality is not necessarily an FSIA instrumentality. Under the FSIA "only *direct* ownership of a majority of shares by the foreign state" can render a corporation an instrumentality. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (emphasis added). Thus, "a subsidiary of an instrumentality is not itself entitled to instrumentality status" under the FSIA. *Id.* at 473. Nevertheless, the Department of Justice has brought prosecutions under the FCPA in which it asserts that a subsidiary of an instrumentality is itself an instrumentality under the FCPA. *E.g.*, Information, *United States v. Marubeni Corp*, No. 12-cr-022 at ¶ 15 (S.D. Tex. Jan. 17, 2012) (arguing that Nigeria LNG Limited, a subsidiary of the Nigerian National Petroleum Corporation, is an FCPA instrumentality of the Nigerian Government).

Underlying such prosecutions is the premise that the FSIA and judicial decisions construing it do not control the meaning of terms used in the FCPA. Though Sigelman does not agree with the substance of the Department of Justice's view of what counts as an "instrumentality" under the FCPA, he shares the Department's recognition that the FSIA and its related caselaw do not govern FCPA cases. This Court should therefore not give any credence to the attempt by the government in this case to borrow the FSIA's definition of "instrumentality" in contradiction of the Department of Justice's official position in other FCPA actions. *See* Government FCPA Brief at 22.

In sum, an entity's status under the FSIA has no bearing on whether it constitutes an FCPA instrumentality. As illustrated in the following chart, the FSIA is a civil statute that employs phrasing the FCPA did not copy. Its definition of "instrumentality" does not require a government function, and that definition is specifically limited to Title 28, Chapter 97 of the U.S. Code. The FCPA is different on all fronts. Most importantly, whatever Ecopetrol's status under the FSIA, it cannot be an FCPA instrumentality *because it performs no government function.*

|  | **FSIA, 28 U.S.C. § 1603** | **FCPA, 15 U.S.C. § 78dd-2** |
|---|---|---|
| Nature of statute | Civil | Criminal |
| Enacted | 1976 | 1977 |
| Text at issue | "agency or instrumentality of a foreign state" | "a foreign government or any department, agency, or instrumentality thereof" |
| Defines "instrumentality"? | Yes | No |
| Scope of statutory definition | Limited to Title 28, Chapter 97 | N/A |
| **Government function required?** | **No** *See* **28 U.S.C. § 1603(b)(2) (majority ownership by a foreign state suffices).** | **Yes** *E.g.,* ***United States v. Esquenazi*, 752 F.3d 912, 921–22, 926 (11th Cir. 2014).** |

## II.     Ecopetrol's SEC filings support Sigelman's motion to dismiss.

As the Court noted during the November 24, 2014 status conference, Ecopetrol's filings with the U.S. Securities and Exchange Commission state that it reserves the right to invoke sovereign immunity under the FSIA. *See, e.g.*, Ecopetrol, Annual Report on Form 20-F at 2 (July 15, 2010) (**2009 SEC Filing**) (**Exhibit A**), *available at* http://www.sec.gov/Archives/edgar/data/1444406/000114420410037939/v190357_20f.htm. As explained in the previous section, however, the fact that Ecopetrol appears to meet the FSIA's definition of "instrumentality" does not make it an "instrumentality" of Colombia under the FCPA. Moreover, even if Ecopetrol is an *instrumentality* under the FSIA, it still would not qualify for *sovereign immunity* under the FSIA, as the actions it performs are wholly commercial, and entities performing commercial activities are not entitled to sovereign immunity under the FSIA. *See* 28 U.S.C. § 1605(a)(2); *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) (issuing bonds is a commercial activity under the FSIA); *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240 (5th Cir. 2002) (a joint venture to discover and extract oil is a commercial activity under the FSIA).

In any event, what matters for purposes of this FCPA case is whether Ecopetrol performed a governmental function in 2010, when the alleged criminal conduct in this case occurred. And on that score, Ecopetrol's 2009 SEC Filing confirms what Sigelman explained in his opening brief: under Colombian law, Ecopetrol *used to* perform a governmental function, but it stopped doing so in 2003 when Colombia issued Decree 1760, which transferred all of Ecopetrol's governmental functions to the National Hydrocarbon Agency (**ANH**). *See* Sigelman FCPA Brief at 7–9, 17. According to Ecopetrol's 2009 SEC Filing, the "Colombian hydrocarbons industry is subject to extensive regulation and supervision" by "the ANH" (an acronym for *Agencia Nacional de Hidrocarburos*). 2009 SEC Filing, Exhibit A at 9. "The ANH was created in 2003" to be the entity "responsible for the administration of Colombia's hydrocarbon reserves."

*Id.* at 58. Before 2003, Ecopetrol served as Colombia's hydrocarbon regulator, but "Decree Law 1760 of 2003" completely reworked the regulatory landscape and "*granted the ANH full and exclusive authority to regulate and oversee the exploration and production of hydrocarbon reserves.*" *Id.* at 59 (emphasis added). As the "exclusive" regulator of hydrocarbons in Colombia, it is ANH alone—not Ecopetrol—that performs a governmental function with respect to oil and gas in Colombia. The Constitutional Court of Colombia reached the exact same conclusion in 2007 when it held that, in the wake of Decree 1760 of 2003, Ecopetrol no longer performed any governmental function. *See* Arrieta Declaration ¶ 58 (citing decision C-722-07), Exhibit A to Sigelman FCPA Brief.

Ecopetrol's 2009 SEC Filing further explains that, as a result of Decree 1760, Ecopetrol "became an operator like any other company, competing with all other regional and international oil companies in Colombia for exploration and production opportunities under the same conditions and without any special rights." 2009 SEC Filing, Exhibit A at 45. "Under current regulations," Ecopetrol "compete[s] under the same conditions as other domestic and foreign oil and gas companies, that is, we receive no special treatment." *Id.* at 12. In other words, *Colombian law* ("current regulations") treats Ecopetrol the *same* as Chevron, ExxonMobil, Royal Dutch Shell, and any other private oil company ("we receive no special treatment"). *See also* Sigelman FCPA Brief at 9–13, 17–18.[2]

---

[2] Ecopetrol's 2009 SEC filing thus confirms that its employees are not foreign officials within the meaning of the OECD Convention on Bribery of Foreign Officials **(OECD Convention)** (full citation below), and courts are "constrained to interpret 'instrumentality' under the FCPA so as to reach [foreign officials within the meaning of ] the OECD Convention." *Esquenazi*, 752 F.3d at 924. Under the OECD Convention, a foreign official is "any person [1] exercising a public function [2] for a foreign country, including for a public agency or public enterprise." As Sigelman pointed out in his opening brief—and the government completely ignored in its opposition brief—comment 15 to the OECD Convention addresses the first element and provides that employees do not "perform a public function" when their employer

Thus, rather than undermine the arguments made in Sigelman's opening brief, Ecopetrol's SEC filings in fact support his argument that Ecopetrol is not an "instrumentality" under the FCPA because it does not perform any government function.

## III.   Colombian law is relevant to determining Ecopetrol's functions.

This Court also noted during the November 24 status conference that the issue of whether Ecopetrol is an "instrumentality" under the FCPA is a question of American law, not foreign law. Sigelman wholeheartedly agrees. All parties also agree, however, that an entity must perform a governmental function to be an "instrumentality" under the FCPA. *See* Brief for the United States, *Esquenazi*, No. 11-15331-C, at 19 (arguing that district court was "correct" in concluding that "an instrumentality must perform a governmental function"); Sigelman FCPA Brief at 15–16.

Colombian law becomes relevant to the FCPA analysis because the way to determine whether Ecopetrol performs a government function for Colombia sufficient to qualify as an "instrumentality" under the FCPA is to examine whether Colombia "*treats* the function the foreign entity performs as its own." *Esquenazi*, 752 F.3d at 925. Federal courts "ought to respect a foreign sovereign's definition of what" is a foreign governmental function. *Id.* And to determine what a "foreign sovereign's definition" of a foreign governmental function is, a federal court must look to that foreign sovereign's law. Thus, in *United States v. Aguilar*, the U.S.

---

"operates on a normal commercial basis in the relevant market, *i.e.*, on a basis which is substantially equivalent to that of a private enterprise without preferential subsidies or other privileges." *See* Sigelman FCPA Brief at 17–18. That is precisely how the 2009 SEC Filing describes Ecopetrol: "we compete under the same conditions as other domestic and foreign oil and gas companies" and "we receive no special treatment." 2009 SEC Filing at 12. Ecopetrol's employees are therefore not foreign officials under the OECD Convention, and this Court is "constrained to interpret 'instrumentality' under the FCPA" to reach the same result—*i.e.*, to rule that Ecopetrol is not an "instrumentality" under the FCPA. *Esquenazi*, 752 F.3d at 924.

Full Citation for the OECD Convention: Organization for Economic Cooperation and Development's Convention on Combating Bribery of Foreign Public Officials in International Business Transactions, Dec. 17, 1997 S. Treaty Doc. No. 105-43, 37 I.L.M. 1 (ratified Dec. 8, 1998, entered into force Feb. 15, 1999).

government alleged that a Mexican electricity company was an FCPA instrumentality because, "[u]nder the Mexican Constitution, the supply of electricity is *solely* a government function." 783 F. Supp. 2d at 1112 (citation omitted). The court in *Aguilar* sided with the U.S. government that the Mexican Constitution was dispositive of the issue. It concluded that the electricity company "performs a function the Mexican nation has described as a quintessential government function—the supply of electricity" because "the Mexican Constitution recognizes the supply of electric power as 'exclusively a function of the general nation.'" *Id.* at 1115. Just as Mexican law determined in *Aguilar* whether a company created and owned by the Mexican government performed a governmental function, so here Colombian law determines whether Ecopetrol performed a governmental function in 2010.

As previously discussed, in 2003, a Colombian *law*, Decree 1760, removed all of Ecopetrol's governmental functions and assigned them to the National Hydrocarbon Agency. Arrieta Declaration ¶¶ 21–24; *see also* 2009 SEC Filing, Exhibit A at 45. And in 2007, a Colombian *judicial decision*—by the Constitutional Court, which is Colombia's court of last resort for matters of constitutional law—expressly held that Ecopetrol no longer performed any governmental function. *Id.* ¶ 58 (citing decision c-722-07). It is plain from these sources that, as a matter of Colombian law, Ecopetrol did not perform any governmental function in 2010.

There are no facts in dispute on this point. The meaning of foreign decrees and foreign judicial decisions is an issue of law to be decided by this Court, not an issue of fact to be decided by a jury. Fed. R. Crim. P. 26.1; *United States v. Peterson*, 812 F.2d 486, 490 (9th Cir. 1987). And in its 29 pages of opposition briefing, the government does not allege a *single* governmental function that Ecopetrol may have performed. *See* Government FCPA Brief at 1–29. In stark contrast to *Aguilar*, where the government identified a provision of the Mexican Constitution that

13

treated the provision of electricity as a governmental function, here the government *does not* identify any provision of Colombian law establishing that Colombia treated Ecopetrol's commercial activities in the oil and gas market as a governmental function in 2010. Indeed, the government *cannot* carry this burden, given that Decree 1760 removed all of Ecopetrol's governmental functions in 2003, and given that Colombia's Constitutional Court ruled in 2007 that Ecopetrol no longer performs a governmental function. The government tries to confuse the issue by emphasizing evidence it will introduce about *other aspects* of Ecopetrol, such as who owns and controls the company. *See* Government FCPA Brief at 16–18. While such evidence may be necessary to prove that Ecopetrol is an FCPA instrumentality, it does not bear on the essential element of whether Ecopetrol performed a governmental function. *See* Brief for the United States, *Esquenazi*, No. 11-15331-C, at 19 ("an instrumentality must perform a governmental function").

The closest the government comes to alleging a governmental function is paragraph 22 of the Indictment, which asserts that Ecopetrol "was responsible for approving contracts to drill or perform services on oil fields in Colombia, including the Mansarovar Contract for which PetroTiger was seeking approval." But this allegation is false as a matter of Colombian law. *See* Sigelman FCPA Brief at 14. Under Colombian law, Ecopetrol "does not have the mandate to approve oil contracts in Colombia." Arrieta Declaration ¶ 60. Because this is a matter of Colombian law, it is an issue for this Court, not a jury to resolve. Fed. R. Crim. P. 26.1. Any questions about the meaning of Colombian law can be resolved at a hearing with expert testimony. *See United States v. Molt*, 599 F.2d 1217, 1219 (3d Cir. 1979).

This Court should therefore rule, as a matter of U.S. law, that Ecopetrol is not an "instrumentality" under the FCPA. The government points out that four other cases allowed a

jury to decide whether a company was an "instrumentality" when there was a *factual* dispute on the issue. *See* Government FCPA Brief at 6 (collecting cases); *e.g.*, *United States v. Esquenazi*, No. 1:09-cr-21010-JEM, at 2–3 (S.D. Fla. Nov. 19, 2010), ECF No. 309 (discussing "factual" challenges defendant raised to whether a company was an instrumentality). Sigelman is not contesting for purposes of this motion whether the Republic of Colombia controls Ecopetrol or some other factual matter. Sigelman's point is more simple—and is entirely a legal point: the government failed to allege the essential element that Ecopetrol performs a governmental function. *See Aguilar*, 783 F. Supp. 2d at 1110 n.4 (resolving defendant's challenge to an entity's status as an instrumentality because "Defendants have chosen to treat their motion as not requiring any factual determinations"). An element of the alleged crime is missing, and given the state of Colombian law, the United States *cannot* rectify the omission. The FCPA charges against Sigelman must therefore be dismissed.

## CONCLUSION

This Court should dismiss all of the FCPA charges against Sigelman (Counts Two, Three, and Four, as well as portions of Counts One and Five). Sigelman also requests that this Court hold a hearing on issues of Colombian law pursuant to Federal Rule of Criminal Procedure 26.1.

Respectfully submitted,

_____
Patrick J. Egan, Esquire
Matthew S. Olesh, Esquire
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel: (215) 299-2825
Fax: (215) 299-2150
pegan@foxrothschild.com

15

/s/ William Burck

William Burck, Esquire
Ben O'Neil, Esquire
Veronica Yepez, Esquire
Jonathan Cooper, Esquire
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
777 6th Street NW
11th Floor
Washington, D.C. 20001-3706
Tel: (202) 538-8000
Fax: (202) 538-8100
williamburck@quinnemanuel.com

*Counsel for Defendant Joseph Sigelman*

Dated: December 11, 2014

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH SIGELMAN | Case No. 14-00263-1 (JEI) |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2014, the foregoing Supplemental Memorandum in Support of Defendant's Pending Motion to Dismiss FCPA Charges and accompanying exhibit were filed electronically with the Case Management/Electronic Case Filing System ("CM/ECF") for the Federal Judiciary.  Notice of this filing will be sent to all parties by operation of the Notice of Electronic Filing system, and the parties to this action may access this filing through CM/ECF.

_____
Patrick J. Egan, Esquire